**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                                                      **5:07-CR-257 (NAM)**

    **vs.**

**MANUEL GONCALVES,**

        **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| Glenn T. Suddaby | Ransom P. Reynolds, III |
| United States Attorney | Assistant United States Attorney |
| Office of the United States Attorney | |
| 100 South Clinton Street | |
| Syracuse, NY 13261-7198 | |
| | |
| Office of George F. Hildebrandt | George F. Hildebrandt, Esq. |
| 300 Crown Building | |
| 304 South Franklin Street | |
| Syracuse, NY 13202 | |
| For Defendant | |

**Hon. Norman A. Mordue, Chief United States District Judge**

**MEMORANDUM DECISION AND ORDER**

**I.     INTRODUCTION**

Defendant Manuel Goncalves moves for reconsideration of the Court's denial of his motion to suppress evidence in connection with law enforcement's first and third entries into his residence on May 10, 2007. *See* Dkt. No. 37, Memorandum-Decision and Order entered May 15, 2008. The government opposes defendant's motion for reconsideration.

**II.     BACKGROUND**

The Court set forth its findings of fact and conclusions of law in its prior decision,

familiarity with which is assumed. In its prior decision, the Court: denied defendant's motion to suppress evidence obtained as a result of law enforcement's first warrantless entry into defendant's residence, specifically, Officer Patrick Coyle's detection of the odor of marijuana upon entering the residence; granted defendant's motion to suppress any evidence obtained as a result of law enforcement's second, warrantless, entry; and denied defendant's motion to suppress evidence obtained following law enforcement's search of his residence pursuant to a warrant.

## III. DISCUSSION

In his motion for reconsideration, defendant argues that: (1) evidence obtained as a result of the first entry should be suppressed based on *Georgia v. Randolph*, 547 U.S. 103, 106 (2006), because defendant's demand that law enforcement leave the residence prevails over Stacey Goncalves's consent to their entry; (2) evidence obtained as a result of the search warrant should be suppressed because (a) it was based, in part, on Officer Coyle's observations after defendant demanded that law enforcement leave the residence, and (b) there is evidence that Detective Susan Izzo was aware of the second illegal entry into the residence prior to applying for the search warrant, thus, the warrant application process was tainted; and (3) in the alternative, the Court should reopen the suppression hearing for further testimony with regard to these matters.

Reconsideration is appropriate in light of an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983). The decision whether to reopen a suppression hearing lies within the Court's discretion. *United States v. Bayless*, 201 F.3d 116, 131-32 (2d Cir. 2000).

**A. First Entry**

Defendant argues, for the first time, that his demand that law enforcement leave the premises "prevails" over any consent that Stacey Goncalves gave to law enforcement to enter the residence. In *Georgia v. Randolph*, 547 U.S. 103 (2006), the Supreme Court held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id*. at 120.

Reconsideration based on *Georgia v. Randolph*, is not required in this case because, as the Court previously found, Stacey Goncalves consented to law enforcement's[1] entry into the residence and Officer Coyle detected the odor of marijuana *before* defendant appeared and told them to leave. *See id*. at 121-22 ("So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it."). Thus, even if defendant revoked any consent Stacey Goncalves gave when he instructed law enforcement to leave his residence, the credible evidence shows that Officer Coyle had detected the odor of marijuana before defendant appeared:

> Q After you got to the second set of doors or the French doors, what did you do at that point?
>
> A I stepped in right through the threshold of the door and immediately upon entry, I noticed a very strong odor of marijuana.
>
> Q And where did Stacey Byrne go when you got to the French doors?

---

[1] Syracuse Police Officer Eric Lindgren was also present.

3

> A She proceeded straight through the door and started asking children who were also in the residence where Manny was.
>
> Q Did you continue to follow her or did you stop at the French doors?
>
> Q And where did Stacey Byrne go when you got to the French doors?
>
> A She proceeded straight through the door and started asking children who were also in the residence where Manny was.
>
> Q Did you continue to follow her or did you stop at the French doors?
>
> A I stopped maybe two paces in, one pace in.
>
> . . .
>
> Q And do you recall if any of the kids responded when she said, where's Manny?
>
> A I don't recall.
>
> Q Okay. What happened next?
>
> A Manny appeared from the unknown location, I guess it was the back of the house.
>
> Q Within how long of when you were in the residence?
>
> A Within seconds.
>
> Q And what happened when he appeared?
>
> A He was highly agitated, he told me to get the fuck out of his house.

Transcript, pp. 16-17 (T. 16-17); *see also* T. 41, Coyle Statement, Dkt. No.15-5.

Further, since Officer Coyle's testimony and written statement consistently indicate that he detected the odor of marijuana before defendant demanded law enforcement leave the residence, and defendant has presented no evidence suggesting otherwise, there is no basis upon which to reopen the suppression hearing for additional testimony. Accordingly, the Court, in its discretion, denies defendant's motion for reconsideration and motion to reopen the suppression

4

hearing for further testimony on the timing of Officer Coyle's detection of the odor of marijuana.

**B.	Search Warrant**

**1.	Officer Coyle**

Defendant seeks reconsideration of the Court's prior decision to deny defendant's motion to suppress evidence obtained as a result of the search warrant. Defendant argues that to the extent "the search warrant application was based in part on Officer Coyle's observations after Mr. Goncalves revoked any consent that may have existed" it was "clearly in violation of *Georgia v. Randolph*". Dkt. No. 41-2, p. 2. Defendant does not elaborate on this argument, but cites the search warrant application and Officer Coyle's statement, both of which set forth Officer Coyle's observations of defendant's behavior following defendant's demand that law enforcement leave the residence. To the extent defendant argues that without this information, the search warrant application did not adequately establish probable cause, his argument is without merit. Even without Officer Coyle's observations of defendant's behavior in the residence, Officer Coyle's detection of the marijuana and Betty Mulkey's statement that she had observed firearms and drugs in defendant's residence provide probable cause to believe that narcotics and illegal weapons would be found in the residence.

Further, to the extent defendant argues that evidence obtained as a result of the search warrant should be suppressed because law enforcement's observations after defendant told them to leave violated the Fourth Amendment and affected their decision to seek a search warrant, his argument is without merit. Even assuming defendant's demand that they leave effectively revoked Stacey Goncalves's consent, exigent circumstances justified law enforcement's continued presence in the residence. As the Court explained in its prior decision:

5

> The exigency of a situation may insulate a warrantless search from constitutional attack if "law enforcement agents were confronted by an 'urgent need' to render aid or take action." *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990) (en banc) (quoting *Dorman v. United States*, 435 F.2d 385, 391 (D.C.Cir. 1970) (en banc)). The Second Circuit has explained that the "urgency" of the officers' need depends on six factors:
>
>> (1) the gravity or violent nature of the offense with which the suspect is to be charged; [2] whether the suspect "is reasonably believed to be armed"; (3) "a clear showing of probable cause ... to believe that the suspect committed the crime"; (4) "strong reason to believe that the suspect is in the premises being entered"; (5) "a likelihood that the suspect will escape if not swiftly apprehended"; and (6) the peaceful circumstances of the entry.
>
> *MacDonald*, 916 F.2d at 769-70 (omission in original). The Second Circuit has considered two more factors in addition to those above, "namely, a reasonable belief by law enforcement officers that (1) the targets of their investigation are armed; and (2) quick action is necessary to prevent the destruction of evidence." *United States v. Brown*, 52 F.3d 415, 421 (2d Cir. 1995).

Dkt. No. 37, p. 15.

In this case, the evidence shows that defendant appeared "within seconds" after law enforcement entered the residence, was "highly agitated", and told law enforcement "to get the fuck out of his house." T. 17. Officer Coyle told defendant that they were "conducting [an] investigation about a vehicle that was parked in his driveway" at which point he "[b]ecame combative, told me to get out, numerous times, and then he started making a beeline for the bedroom door." T.17-18. Officer Coyle followed him, and defendant slammed the door in front of Officer Coyle. T.18. Stacey Goncalves and the children were yelling, and Ms. Goncalves had become "uncooperative and combative". *Id.* Defendant took a dresser and slid it in front of the bedroom door, and called 911 while Officer Coyle contacted his supervisor. T.19-20; Dkt. No. 15-4 (Transcript of 911 Call). Officer Coyle refused defendant's request that he speak with the 911 operator, at which point, defendant exited the bedroom and remained combative,

6

uncooperative, highly agitated, and was "taking a defensive posture." T.20. For "officer safety reasons", Officer Coyle wanted "to keep and eye on him and not let him get too far away from me" until a superior arrived. T. 21. Officer Coyle further explained that he did not leave because he: "had a strong odor of marijuana in the house and I also had Manny who was highly combative and agitated, walking into a bedroom where there's supposed to be some guns so I had to make sure I investigated that also." T. 36.

These facts demonstrate that a rapidly escalating and potentially violent situation justified law enforcement's decision to remain inside the residence. First, Officer Coyle detected the odor of marijuana in the residence. Second, law enforcement had reason to believe that defendant possessed firearms. Third, based on Mulkey's statement that defendant possessed narcotics and weapons, and Officer Coyle's detection of the odor of marijuana, law enforcement had probable cause to believe a crime was being committed. Fourth, defendant was on the premises. Fifth, evidence that defendant tried to get away from law enforcement by barricading himself in a bedroom, and then took a "defensive posture" provides a basis for finding that there was a likelihood that defendant might escape if not swiftly apprehended. Sixth, law enforcement attempted to effect a peaceful entry for the purpose of speaking to defendant by walking into the residence only after obtaining consent from Stacey Goncalves.

Under these circumstances, the exigencies of the situation, including defendant's reaction to law enforcement's appearance in the residence, his efforts to barricade himself against law enforcement, and law enforcement's belief that defendant may be armed and that he possessed drugs in the residence, justified law enforcement's warrantless presence in the residence. Since law enforcement's presence was justified, there is no basis on which to find that the warrant

application process was tainted. Additionally, because the parties exhaustively explored these circumstances at the hearing, there is no reason to reopen the suppression hearing. Accordingly, the Court, in its discretion denies defendant's motion for reconsideration.

### 2. Detective Izzo

Finally, defendant argues, as he did, unsuccessfully, in his initial motion, that Detective Susan Izzo was aware that law enforcement had entered the residence, illegally, a second time, and that knowledge prompted her to seek a warrant and tainted the application process. In support of his argument, defendant relies on Detective Izzo's report, in which she states that she "was advised by Det. Sgt. Proud that at 17:40 hrs. this date, he and other SID Detectives had entered 114 Lawrence St. and secured the occupants" as evidence that the second entry tainted the search warrant application. Dkt. No. 41-3. At the hearing, Detective Izzo testified that she did not start her application "until sometime after 5:40 p.m." T. 78. Detective Izzo's report, however, is not inconsistent with the Court's finding because the report only recites the time Sergeant Proud entered the residence; it does not indicate that Sergeant Proud informed her that they entered the residence before she sought the warrant. Indeed, Detective Izzo testified that although she talked to Sergeant Proud on her way to the office to work on the search warrant application to fill "him in as to what was going on", he did not tell her at that point that he had observed marijuana in the residence. T. 79. Additionally, the search warrant application contained no information from the second search. Thus, there is no basis to find that the second, illegal, search in any way tainted the search warrant application. Finally, since the parties addressed the issue of Detective Izzo's knowledge of the second entry at the suppression hearing, the Court, in its discretion, denies defendant's request to reopen the hearing. Accordingly,

defendant's motion for reconsideration on the issue of Detective Izzo's knowledge of the second search is denied.

## IV. CONCLUSION

For the foregoing reason, it is hereby

**ORDERED** that defendant's motion for reconsideration is denied in its entirety.

**IT IS SO ORDERED.**

Date:  September 5, 2008

Norman A. Mordue
Chief United States District Court Judge